## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-23213-BLOOM/Otazo-Reyes

YARIBEL RABELO-RODRIGUEZ,
*et al.*,

      Plaintiffs,

v.

ALEJANDRO MAYORKAS, in his official capacity
as the UNITED STATES SECRETARY
OF HOMELAND SECURITY,

      Defendant.

_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION
## AND MOTION TO ADD NAMED-PLAINTIFFS

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Class Certification, ECF No. [32] ("Motion for Class Certification") and Plaintiffs' Opposed Motion to Add Named-Plaintiffs Under Rules 20(a) and 21, ECF No. [43] ("Motion to Add Named-Plaintiffs"). With respect to the Motion for Class Certification, Defendant United States Secretary of Homeland Security ("DHS" or "Government") filed a Response in Opposition, ECF No. [38] ("Response"), to which Plaintiffs filed a Reply, ECF No. [44] ("Reply"). With respect to the Motion to Add Named-Plaintiffs, Defendant filed a Response in Opposition, ECF No. [46], to which Plaintiffs filed a Reply, ECF No. [47]. The Court has carefully reviewed both Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion for Class Certification is denied and the Motion to Add Named-Plaintiffs is denied.

## I.   BACKGROUND

On September 3, 2021, twenty-one (21) Plaintiffs filed this action against Defendant alleging that Defendant's denial of permanent residence to Plaintiffs and the proposed class was based on an impermissible construction of the governing statute (Count I) and that Defendant's denial of permanent residence to Plaintiffs and the proposed class was done without reasoned and meaningful consideration (Count II). *See generally* ECF No. [1].

According to the initial complaint, Plaintiffs are arriving aliens or non-arriving aliens from Cuba who sought refuge in the United States after the end of the special parole program for Cuban nationals, colloquially referred to as the "wet-foot/dry-foot policy." *See id.* at 4.[1] After the end of the "wet-foot/dry-foot policy," Defendant released Plaintiffs and the proposed class into the United States without keeping them in mandatory detention under 8 U.S.C. §§ 1225(b)(1) and (b)(2). *See id.* However, rather than documenting their release into the United States as a "parole" under § 1182(d)(5), Defendant decided to "conditionally parole" Plaintiffs under § 1226(a). *See id.* When Plaintiffs subsequently applied for permanent residence under the Cuban Refugee Adjustment Act of 1966 ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (as amended), Defendant denied their applications on the grounds that they failed to demonstrate that they had been paroled into the United States. *See, e.g.*, ECF No. [1] ¶¶ 118, 130. Defendant also denied Plaintiffs' motions to reconsider in which Plaintiffs argued that they had been paroled as a matter of law. *See, e.g.*, *id.* ¶¶ 119-20, 131-32. Plaintiffs' contention is that given the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), Plaintiffs' release was a parole under § 1182(d)(5) as a matter of law and their applications should have been processed accordingly. *See* ECF No. [1] at 4.

---

[1] Noncitizens who present themselves for inspection at a port of entry are arriving aliens. *See* 8 C.F.R. § 1.2. By contrast, noncitizens who fail to present themselves at a port of entry and enter the country between ports of entry are non-arriving aliens. *See id.*; ECF No. [38] at 3.

On October 9, 2021, Plaintiffs filed their Unopposed Motion to Add Named-Plaintiffs, seeking to add twenty-two (22) named Plaintiffs. ECF No. [29]. The Court granted the Motion and Plaintiffs thereafter filed their First Amended Complaint ("FAC"), with a total of forty-three (43) Plaintiffs. ECF No. [33]. On October 12, 2021, Plaintiffs filed the instant Motion for Class Certification seeking class certification under Fed. R. Civ. P. 23(a) and 23(b)(2). ECF No. [32]. Plaintiffs proposed the following class:

> All Cuban nationals:
> (1) who are "applicants for admission" under 8 U. S. C. § 1225(a)(1) that were not admitted into the U.S. in accordance with § 1101(a)(13)(A);
> (2) who were enlarged or released from DHS custody into the U.S. after January 12, 2017;
> (3) prior to the completion of proceedings contemplated by either 8 U. S. C. §§ 1225(b)(1) or (b)(2); and
> (4) who applied for adjustment of status under the Cuban Refugee Adjustment Act of 1966 (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (as amended), with U. S. Citizenship and Immigration Services (USCIS), but were denied that relief on the grounds that they did not demonstrate that they had been "inspected and admitted or paroled into the U.S."

ECF No. [32] at 3.

To elaborate on the pertinent statutes, § 1225 sets forth the procedure for the inspection of applicants for admission by immigration officers. *See* 8 U.S.C. § 1225 *et seq.* Applicants for admission include both arriving and non-arriving aliens. *See* 8 U.S.C. § 1225(a) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission."). Sections 1225(b)(1) and (b)(2) detail detention and removal proceedings for applicants for admission. *See* 8 U.S.C. §§ 1225(b)(1) ("If an immigration officer determines that an alien . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing

or review unless the alien indicates either an intention to apply for asylum under section 1158 of

this title or a fear of persecution.") and (b)(2) ("[I]f the examining immigration officer determines

that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien

shall be detained for a proceeding under section 1229a of this title.").

Section 1182(d)(5) provides the means for release under parole by stating in relevant part:

(A) The Attorney General may . . . in his discretion parole into the United States
temporarily under such conditions as he may prescribe only on a case-by-case
basis for urgent humanitarian reasons or significant public benefit any alien
applying for admission to the United States, but such parole of such alien shall
not be regarded as an admission of the alien and when the purposes of such
parole shall, in the opinion of the Attorney General, have been served the alien
shall forthwith return or be returned to the custody from which he was paroled
and thereafter his case shall continue to be dealt with in the same manner as
that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5). Section 1226 sets forth the procedure for the apprehension and detention

of aliens, beyond the country's border, and means for release on bond or conditional parole for

such aliens.

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and
detained pending a decision on whether the alien is to be removed from the
United States. Except as provided in subsection (c) and pending such decision,
the Attorney General—
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on—
        (A) bond of at least $1,500 with security approved by, and
            containing conditions prescribed by, the Attorney General; or
        (B) conditional parole; but
    (3) may not provide the alien with work authorization (including an
    'employment authorized' endorsement or other appropriate work
    permit), unless the alien is lawfully admitted for permanent residence or
    otherwise would (without regard to removal proceedings) be provided
    such authorization.

8 U.S.C. § 1226. Finally, under the CAA,

[T]he status of any alien who is a native or citizen of Cuba and who has been
inspected and admitted or *paroled* into the United States subsequent to January 1,
1959 and has been physically present in the United States for at least two years,

4

> may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

Cuban Refugee Adjustment Act of 1966 (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (emphasis added). Pursuant to *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257 (BIA 2010), conditional parole under § 1226, does not constitute parole for the purposes of adjustment of status.

Defendant contends that Plaintiffs' proposed class does not meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2). *See generally* ECF No. [38]. Plaintiffs claim that Defendant mischaracterizes the class definition and that the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and 23(b)(2). *See generally* ECF No. [44].

On November 4, 2021, Plaintiffs filed an unopposed Motion to Drop Certain Named Plaintiffs, requesting to drop twenty (20) of the forty-three (43) named Plaintiffs pursuant to Fed. R. Civ. P. 21. ECF No. [39]. The Court granted the Motion, leaving only twenty-three (23) Plaintiffs. ECF No. [40]. On November 8, 2021, Plaintiffs filed an opposed second Motion to Add Named-Plaintiffs, requesting to add nineteen (19) Plaintiffs pursuant to Fed. R. Civ. P. 20(a) and 21. ECF No. [43]. Defendant filed a Response in Opposition, ECF No. [46], and Plaintiffs filed a Reply. ECF No. [47].

## II.    LEGAL STANDARD

### A.  Class Certification

District courts have broad discretion in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class action, the putative class must satisfy "the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir.

2012)); *see also Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." (quoting *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997)).

"Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187–88 (11th Cir. 2003)) (internal quotation marks omitted). Under Rule 23(b)(2), class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein,* 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis in original). "A district court must conduct a rigorous analysis of the Rule 23

prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

### B.  Pertinent Immigration Decisions

#### i. *In re X-K-*, 23 I. & N. Dec. 731 (BIA 2005)

On May 4, 2005, the Board of Immigration Appeals ("BIA") issued a decision in *In re X-K-*, 23 I. & N. Dec. 731, 2005 WL 1104422 (BIA 2005). It stated that aliens initially screened for expedited removal under § 1225(b)(1)(A), who are subsequently placed in removal proceedings under 8 U.S.C. § 1229a, are generally eligible for a custody redetermination hearing before an immigration judge following a positive credible fear determination. The BIA determined that non-arriving aliens could be subject to bond hearings and released pursuant to an immigration judge's general custody authority under § 1226. *See id.* The decision states in relevant part, "Immigration Judges must assess . . . bond factors with respect to 'certain other aliens [i.e., non-arriving aliens],' who were initially considered for expedited removal, in the same manner as other aliens who are within the Immigration Judges' general custody jurisdiction in removal proceedings." *Id.* at 736. As a result of *In re X-K-*, select non-arriving aliens were eligible to be released on bond or conditional parole under § 1226, rather than parole under § 1182(d)(5).

#### ii. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)

On February 27, 2018, the Supreme Court determined in *Jennings* that aliens detained for immigration proceedings were not entitled to periodic bond hearings. *See* 138 S. Ct. at 833-34. The Supreme Court held that § 1226, which allows for the release of detained aliens on bond or conditional parole, could not be interpreted as placing a six-month limit on detention or requiring periodic bond hearings. *See id.* The Supreme Court also stated, in relevant part, that the only exception to the detention of aliens pursuant to §§ 1225(b)(1) and (b)(2) was § 1182(d)(5)(A)

parole. *See id.* at 844 ("That express exception [§ 1182(d)(5)(A) parole] to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released." (emphasis in original)). Courts have since interpreted *Jennings* to apply to arriving aliens. *See Leke v. Hott*, 521 F. Supp. 3d 597, 601 (E.D. Va. 2021) ("The Supreme Court in these circumstances has made clear that § 1225(b) applies to arriving aliens, and that this provision both authorizes and governs detention of arriving aliens . . . ." (citing *Jennings*, 138 S. Ct. at 845)); *see also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 143 (D.D.C. 2018) ("In *Jennings v. Rodriguez*, the Supreme Court addressed a Ninth Circuit decision interpreting § 1225(b) to limit detention of arriving aliens to six-month periods, after which they are entitled to bond hearings." (citing *Jennings*, 138 S. Ct. at 839)). As a result of the decision, select arriving aliens were eligible to be released on parole under § 1182(d)(5), and not conditional parole or bond under § 1226.

### iii. *Padilla v. U.S. Immigr. & Customs Enf't*, 387 F. Supp. 3d 1219 (W.D. Wash. 2019)

On July 2, 2019, the U.S. District Court for the Western District of Washington issued a nationwide injunction ("*Padilla* Injunction"), which required the Government to conduct bond hearings for "immigrants who have entered the United States without inspection [i.e., non-arriving aliens], requested asylum, and who the Government has determined have a credible fear of persecution if they return home." *Padilla v. U. S. Immigr. & Customs Enf't*, 387 F. Supp. 3d 1219, 1223 (W.D. Wash. 2019), *aff'd in part, vacated in part, remanded*, 953 F.3d 1134 (9th Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 1041 (2021); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 379 F. Supp. 3d 1170 (W.D. Wash. 2019). As a result of the *Padilla* Injunction, select non-arriving aliens have been eligible to be released on bond, rather than parole under § 1182(d)(5). The *Padilla* Injunction remains in place as the case proceeds on remand from the United States Supreme Court before the Ninth Circuit. *See* 141 S. Ct. 1041.

### C. Permissive Joinder

"The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cty. Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (citing Fed. R. Civ. P. 20.). Under Rule 20,

> "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Fed. R. Civ. P. 20. When considering the joinder of parties, "the broadest possible scope of action consistent with fairness to the parties . . . is strongly encouraged." *United Mine Workers v. Gibbs*, 282 U.S. 715, 724 (1966).

In analyzing whether parties are properly joined under Rule 20, "the term 'transaction is a word of flexible meaning' that 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Gonzalez v. Batsmasian*, 320 F.R.D 580, 581 (S.D. Fla. 2017) (quoting *Alexander*, 207 F.3d at 1323). Moreover, to satisfy the commonality prong for proper joinder, all that is required is that the plaintiffs share a common question of law or fact. *Alexander*, 207 F.3d at 1324. Several district courts have held that "'Rule 20 contemplates a much lower threshold for allowing plaintiffs' claims to proceed to trial together than is required by Rule 23 for class certification.'" *See, e.g.*, *Taylor v. Wells Fargo Bank, N.A.*, No. 3:16-cv-159-J-32JRK, 2017 WL 7371182, at *10 (M.D. Fla. Aug. 8, 2017) (quoting *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 542 (S.D. Ala. 2007)).

Additionally, under Rule 21, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The district courts are accordingly given "broad discretion to join parties

or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2000); *see also Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1326 (S.D. Fla. 2014).

## III.   DISCUSSION

### A.  Named Plaintiffs

As a preliminary matter, given the procedural history of the case, the Court finds it necessary to define the named Plaintiffs that seek class certification. On September 3, 2021, twenty-one (21) Plaintiffs ("Group 1") filed this action. ECF No. [1]. On October 10, 2021, the Court granted Plaintiffs' Unopposed Motion to Add New Plaintiffs, adding twenty-two (22) Plaintiffs ("Group 2"). ECF No. [30]. On October 12, 2021, the forty-three (43) named Plaintiffs from Groups 1 and 2 filed the Motion for Class Certification. ECF No. [32]. On November 5, 2021, the Court granted the parties' Joint Motion and Stipulation to Drop Certain Named Plaintiffs, ECF No. [39], dropping twenty (20) Plaintiffs from Group 1, leaving only twenty-three (23) named Plaintiffs. ECF No. [40]. Therefore, the remaining twenty-three (23) named Plaintiffs – one (1) from Group 1 and twenty-two (22) from Group 2 – are the remaining Plaintiffs that the Court considers as it relates to the instant Motion for Class Certification.[2]

The Court recognizes that all of the Plaintiffs from Group 2 may have resolved their claims with Defendant and may soon be dropped from the lawsuit. *See* ECF No. [44] at 8; *see also* ECF No. [38] at 9. They have not done so yet. As such, the Court addresses the Motion for Class Certification based on the twenty-three (23) Plaintiffs reflected in the record. ECF No. [44] at 8. The Court also notes that on November 8, 2021, Plaintiffs filed the Opposed Motion to Add Named-Plaintiffs, seeking to join nineteen (19) Plaintiffs ("Group 3"). ECF No. [43]. However,

---

[2] The sole remaining Plaintiff from Group 1 is a non-arriving alien, Adelmis Reve-Marquez. *See* ECF No. [38] at 6. All of the Plaintiffs from Group 2 are arriving aliens. *See id.* at 7.

because the Court addresses the Motion to Add Named-Plaintiffs after addressing the Motion for Class Certification, Group 3 is not a part of the lawsuit yet and not a part of the Court's analysis regarding the Motion for Class Certification.

As Defendant correctly argues, even if the Court were to decide the Motion to Add Named-Plaintiffs before deciding the Motion for Class Certification and permitted the joinder of Group 3, it would not alter the Court's analysis of the Motion for Class Certification. *See* ECF No. [38] at 7, n.4. As discussed below, the joinder of Group 3 would not change the Court's determination that Plaintiffs have failed to meet the requirements of Rule 23(a) and Rule 23(b)(2). To elaborate, Group 3 would not cure the lack of commonality between arriving aliens and non-arriving aliens, nor the fact that the final injunctive and declaratory relief sought would not be with respect to the class as a whole. As such, the Court considers the Motion for Class Certification based on the twenty-three (23) named Plaintiffs currently before the Court and then considers the Motion to Add Named-Plaintiffs.

### B. Rule 23(a) – Numerosity

Under Rule 23(a), Plaintiffs are required to demonstrate each of the four factors for class certification: numerosity, commonality, typicality, and adequacy. *Vega*, 564 F.3d at 1265. Under the first prong of Rule 23(a), a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable." *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). "The focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Id.* at 678-79 (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Generally, less than twenty-one (21) class members is

inadequate to satisfy the numerosity requirement, but more than forty (40) is adequate. *Id.* (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).

Plaintiffs contend that the numerosity requirement is met by the named Plaintiffs as well as the proposed class of Cuban nationals. *See* ECF No. [32] at 14. Defendant does not contest the numerosity requirement. *See generally* ECF No. [38]. Presently, there are twenty-three (23) named Plaintiffs. *See id.* at 7. Even if all of the Plaintiffs from Group 2 were to drop out of the lawsuit as the Parties anticipate, *see* ECF No. [44] at 8; *see also* ECF No. [38] at 9, and even if the Motion to Add Named-Plaintiffs was denied, the proposed class includes thousands of Cuban nationals who are alleged to be similarly situated, *see* ECF No. [32] at 17. As such, Plaintiffs have satisfied the numerosity requirement.

### C.  Rule 23(a) – Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.") (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). In *Wal–Mart Stores, Inc. v. Dukes*, the Supreme Court held that commonality requires that the claim of the putative class "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common questions—even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation and internal quotation marks omitted; emphasis in original).

Plaintiffs argue that the proposed class shares the same controlling questions of law and fact. *See* ECF No. [32] at 18. The proposed class is comprised of Cuban national applicants for admission who were not admitted into the U.S. and released from DHS custody after January 12, 2017, prior to removal proceedings under 8 U.S.C. §§ 1225(b)(1) and (b)(2). *See id.* The class subsequently applied for adjustment of status under the CAA and were denied their adjustment of status because they failed to demonstrate that they had been paroled into the United States. *See id.* Plaintiffs claim that one question of law applies to the entire class – whether the class was paroled under 8 U.S.C. § 1182(d)(5) as a matter of law pursuant to *Jennings*. *See id.* at 19; *see also* 138 S. Ct. at 844. Plaintiffs argue that *Jennings* requires the release of all applicants for admission to be a parole under § 1182(d)(5). *See* ECF No. [44] at 6-7. According to Plaintiffs' interpretation of *Jennings*, conditional parole under § 1226(a) is only available for "deportable aliens." *Id.* at 6. As such, Plaintiffs argue that the entire class was subject to § 1225(b) proceedings and must have been released on parole pursuant to § 1182(d)(5), not conditional parole pursuant to § 1226(a). *See id.* at 6-7. Plaintiffs stress that the Supreme Court held that there are no circumstances, other than parole under § 1182(d)(5), through which aliens detained under § 1225(b) may be released. *See id.* at 5-6.

Defendant disputes that Plaintiffs have satisfied the commonality requirement. *See* ECF No. [38] at 13-14. Defendant's contention is that *Jennings* does not apply to non-arriving aliens, *see* ECF No. [38] at 14, and that members of the proposed class were therefore released through varying mechanisms, not necessarily parole under § 1182(d)(5), depending on the member's status as an arriving alien or non-arriving alien, as well as the time and location of apprehension in the case of non-arriving aliens. In short,

- Arriving aliens were generally subject to removal proceedings under § 1225 and may have been released on conditional parole pursuant to § 1226(a). *See id.* at 13.[3]

- Non-arriving aliens were generally subject to removal proceedings under either §§ 1225 or 1226, depending on the time and location of their apprehension. *See id.*

  o Non-arriving aliens who entered the country in 2017 and were apprehended later were subject to detention pursuant to § 1226(a) and may have been released on bond or conditional parole, and not parole under § 1182(d)(5). *See* ECF No. [38] at 13.

  o Non-arriving aliens who entered the country in 2017 and were apprehended at the border were subject to expedited removal proceedings under § 1225(b) and may have been released on bond under § 1226(a) if found to have a credible fear of returning to Cuba pursuant to *In re X-K-*, and not parole under § 1182(d)(5). *See id.* at 13-14.

  o Non-arriving aliens who entered the country in 2020 and were apprehended at the border were subject to expedited removal proceedings under § 1225(b) and may have been released on bond pursuant to the *Padilla* Injunction if found to have a credible fear of returning to Cuba, and not parole under § 1182(d)(5). *See id.* at 14.

- Still others in the relevant time period may have been released pursuant to a habeas petition, and not parole under § 1182(d)(5). *See id.* at 8-9.

Defendant's argument is persuasive. The proposed class makes no distinction between arriving aliens and non-arriving aliens who may have been released under various mechanisms.

---

[3] Defendant appears to admit that this group of released arriving aliens should have been released on parole under § 1182(d)(5). *See* ECF No. [38] at 9; *see also Jennings*, 138 S. Ct. at 845.

Instead, Plaintiffs propose a class of "applicants for admission" that includes both arriving aliens and non-arriving aliens who have been released under different mechanisms. *See* ECF No. [32] at 3 ("All Cuban nationals: (1) who are 'applicants for admission' under 8 U.S.C. § 1225(a)(1)"); *see also* ECF No. [33] ¶ 121 (noting that "applicants for admission" include noncitizens who present themselves at a designated port of arrival and those who do not). While Defendant has indicated that arriving alien Plaintiffs are entitled to parole under § 1182(d)(5), *see* ECF No. [38] at 9 (noting that Defendant offered to grant § 1182(d)(5) parole documents to arriving alien Plaintiffs and to negotiate a resolution for all other arriving aliens similarly situated), the various mechanisms through which non-arriving aliens were released suggest that non-arriving aliens may not be similarly entitled to parole under § 1182(d)(5).

Plaintiffs argue that Defendant mischaracterizes the proposed class. *See* ECF No. [44] at 2. Plaintiffs contend that the proposed class does not include Cuban nationals who have been released by immigration judges or a federal court order and only includes Cuban nationals who have been released by the Department of Homeland Security ("DHS") "under its own volition." *Id.* Plaintiffs claim that since the proposed class does not include individuals who have been released by an immigration judge or a federal court order, individuals who may have been released under *In re X-K-*, the *Padilla* Injunction, or a habeas petition are irrelevant to the Court's analysis. *See id.* However, a review of the class definition does not support Plaintiffs' argument. *See* ECF No. [32] at 3. The proposed class definition does not contain any language that limits the proposed class to "Cuban nationals released from DHS custody *by* DHS[.]" ECF No. [44] at 2 (emphasis in original). Instead, the class definition includes individuals "who were enlarged or released from DHS custody" regardless of whether they were released by an immigration judge, a federal court order, or DHS. ECF No. [32] at 3.

Even if the proposed class only included arriving aliens and non-arriving aliens who were released by DHS under its own volition as Plaintiffs argue, Plaintiffs must resolve the differences between arriving aliens and those non-arriving aliens. Plaintiffs argue that the differences between arriving aliens and non-arriving aliens are an immaterial "regulatory creation" that does not affect whether the alien is an applicant for admission under § 1225(a)(1). ECF No. [32] at 18, n.8. However, Defendant correctly points out that arriving aliens and non-arriving aliens are materially different and have received differing treatment. *See* ECF No. [38] at 15, n.6 (noting that the United States Citizenship and Immigration Services ("USCIS") generally has exclusive jurisdiction to grant adjustment of status for arriving aliens but not non-arriving aliens (citing 8 C.F.R. § 1245.2(a)(1)(ii)). In the FAC, Plaintiffs also appear to acknowledge that USCIS decisions regarding Cuban nationals who are "arriving aliens" are not subject to review by immigration judges. ECF No. [33] ¶ 7 (citing *Perez v. USCIS*, 774 F.3d 960, 966-67 (11th Cir. 2014)). Plaintiffs notably omit any discussion about whether USCIS decisions on Cuban nationals who are non-arriving aliens are subject to review by immigration judges, thereby implicitly recognizing the differing treatment of arriving and non-arriving aliens. *See id.*

Nonetheless, Plaintiffs argue that, in this context, the difference is immaterial because *Jennings* does not distinguish between arriving aliens and non-arriving aliens, and that *Jennings* requires the release of all applicants for admission to be a parole under § 1182(d)(5). *See* ECF No. [44] at 6-7. According to Plaintiffs' interpretation of *Jennings*, conditional parole under § 1226(a) is not possible for applicants for admission and is only available for "deportable aliens." *Id.* at 6. As such, Plaintiffs argue that applicants for admission who were subject to § 1225(b) proceedings and subsequently released must have been released under parole pursuant to § 1182(d)(5), not conditional parole under § 1226(a). *See id.* at 6-7 (noting that the Supreme Court rejected the

argument that "once detention authority ends under § 1225(b)(1) and (b)(2), aliens can be detained [and released] only under § 1226(a)" (quoting *Jennings*, 138 S. Ct. at 845)). Plaintiffs contend that in *Jennings*, 138 S. Ct. at 844, the Supreme Court held that there are no circumstances, other than parole under § 1182(d)(5), through which arriving and non-arriving aliens detained under § 1225(b) may be released. *Id.* at 5-6. Plaintiffs also argue that the majority rejected Justice Breyer's dissent in *Jennings* which set forth the argument that § 1226(a)(2)(A) (release on bond) works with §§ 1225(b)(1) and (b)(2) to allow for the release of noncitizens on bond without the need for § 1182(d)(5) parole. *See id.*; *see also Jennings*, 138 S. Ct. at 870-72, 874-75 (Breyer, J., dissenting).

However, the passage in *Jennings* – cited by Plaintiffs to support their argument that § 1226(a) only applies to deportable aliens – merely indicates that deportable aliens under § 1227(a) may be removed by § 1226(a). *See Jennings*, 138 S. Ct. at 837. The Supreme Court did not limit § 1226(a) to "only" deportable aliens and not applicants for admission, as Plaintiffs contend. ECF No. [44] at 6; *see also Jennings*, 138 S. Ct. at 837. Therefore, Plaintiffs fail to demonstrate that arriving and non-arriving aliens alike must be processed under § 1225(b) and cannot be subject to § 1226(a).[4] In addition, the passage from *Jennings* that Plaintiffs quote for the proposition that all applicants for admission must have been released under parole, not conditional parole, does not support Plaintiffs' argument. In the quoted passage, the Supreme Court rejected the argument that "once detention authority ends under §§ 1225(b)(1) and (b)(2), aliens can be detained *only* under § 1226(a)." *Jennings*, 138 S. Ct. at 845 (emphasis added). Other than indicating that aliens could be detained under other mechanisms in addition to § 1226(a), the passage does not appear to have any bearing on whether some aliens cannot also be detained and

---

[4] To reiterate, certain non-arriving aliens have been subject to § 1226(a) but arriving aliens have only been subject to § 1225(b). *See* ECF No. [38] at 13-14.

subsequently released under § 1226(a). Therefore, Plaintiffs fail to show that *Jennings* requires all applicants for admission to be processed for removal proceedings under § 1225(b) and that non-arriving aliens cannot be released on bond or conditional parole under § 1226(a).

Furthermore, Defendant asserts that *Jennings* does not apply to non-arriving aliens. *See* ECF No. [38] at 14. Defendant argues that *Jennings* was an appeal of a Ninth Circuit decision, *Rodriguez v. Robbins*, 804 F.3d 1050 (9th Cir. 2015), that required bond hearings for "arriving aliens" detained under § 1225(b). *Id.* Defendant contends, therefore, that the Supreme Court's ruling necessarily pertained to the class before it – namely, arriving aliens and *not* non-arriving aliens. *See id.* Indeed, courts have interpreted *Jennings* to apply to arriving aliens. *See Leke v. Hott*, 521 F. Supp. 3d 597, 601 (E.D. Va. 2021) ("The Supreme Court in these circumstances has made clear that § 1225(b) applies to arriving aliens, and that this provision both authorizes and governs detention of arriving aliens . . . ." (citing *Jennings*, 138 S. Ct. at 845)); *see also Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 143 (D.D.C. 2018) ("In *Jennings v. Rodriguez*, the Supreme Court addressed a Ninth Circuit decision interpreting § 1225(b) to limit detention of arriving aliens to six-month periods, after which they are entitled to bond hearings." (citing *Jennings*, 138 S. Ct. at 839)).

If *Jennings* only applies to arriving aliens, as Defendant argues, then the Supreme Court's ruling that "there are no other circumstances [other than parole pursuant to § 1182(d)(5)(A)] under which aliens detained under § 1225(b) may be released," would not apply to non-arriving aliens who may be released pursuant to § 1226(a). *Jennings*, 138 S. Ct. at 844 (emphasis omitted). Further, if *Jennings* only applies to arriving aliens, then the passages in Justice Breyer's dissent that Plaintiffs cite – which allegedly set forth the rejected argument that § 1226(a)(2)(A) works with §§ 1225(b)(1) and (b)(2) to permit release on bond without the need for § 1182(d)(5) parole

– would be a rejected argument with respect to arriving aliens only. *See Jennings*, 138 S. Ct. at 870-72, 874-75 (Breyer, J., dissenting). Put differently, § 1226(a)(2)(A) may work with §§ 1225(b)(1) and (b)(2) in the context of non-arriving aliens to allow for release on bond rather than parole only.

In sum, Defendant sets forth a plausible argument that *Jennings* does not apply to non-arriving aliens. *See id.* at 14. Given the Parties' competing interpretations of *Jennings*, the analysis the Court would have to conduct, after certifying the proposed class, would vary depending on whether the Court was considering an arriving alien or non-arriving alien. This analysis necessarily raises the possibility that there is no "common answer" for the entire class of arriving and non-arriving aliens. *Wal-mart*, 564 U.S. at 350. Further, if the Court were to consider non-arriving aliens released under *In re X-K-* and those released under *Padilla*, as the class is currently defined, the Court would have to analyze whether *Jennings* is applicable to those subgroups of non-arriving aliens as well.[5] As such, Plaintiffs have failed to meet the burden of demonstrating commonality.

Lastly, Plaintiffs raise the possibility of the Court *sua sponte* redefining the class. *See* ECF No. [44] at 3, n.2. Plaintiffs also allude to the possibility of subclasses but do not seek to certify subclasses. *See* ECF No. [44] at 10, n.6; *see also id.* at 8-9.[6] Ultimately, however, Plaintiffs' Counsel states in no uncertain terms that "the undersigned do not believe there exists a basis for breaking up the proposed class into sub-classes" and that Plaintiffs' Counsel "articulated to the

---

[5] It should be noted that Defendant relies on *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), to argue that the Court should not consider the merits of Plaintiffs' claims when determining class certification. *See* ECF No. [38] at 11, 14-15. However, the Supreme Court stated in *Wal-Mart*, 564 U.S. at 351, n.6, that *Eisen* did not set forth the proposition that the courts may not examine the merits of the plaintiff's claim when considering class certification. The Supreme Court clarified that courts may examine the merits of a plaintiff's case. *See id*. As discussed above, the Court has therefore examined the merits of Plaintiffs' claims under Plaintiffs' interpretation of *Jennings* and Defendant's interpretation of *Jennings*, which raise the possibility of inconsistent answers among members of the proposed class.

[6] Plaintiffs' Motion to Add Named-Plaintiffs further discusses the possibility of subclassification. *See* ECF No. [43] at 6.

[Defendant] that [Plaintiffs] would not stipulate to such." ECF No. [44] at 9. The Eleventh Circuit has determined that "[t]he district court has no *sua sponte* obligation to subclassify, it is the plaintiff's burden to designate an appropriate class." *Heaven*, 118 F.3d at 738. The Court declines to *sua sponte* redefine the class or subclassify or to address whether the new class and/or subclasses meet the requirements for class certification, especially since Plaintiffs' Counsel does not consider subclassification to be necessary.

Because Plaintiffs have failed to meet the commonality requirement, the Court does not analyze the remaining factors for class certification under Rule 23(a).

### D.  Rule 23(b)(2)

Even if Plaintiffs satisfied the elements of Rule 23(a), Plaintiffs do not satisfy Rule 23(b)(2). To obtain class certification, Plaintiffs must satisfy one of the three requirements enumerated in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiffs seek to certify the class under Rule 23(b)(2), *see* ECF No. [32] at 3, which requires the Court to find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs argue that Defendant has acted on grounds that apply generally to the class and that the corresponding relief sought applies to the class as a whole. *See* ECF No. [32] at 21-22.[7] Defendant argues that Defendant has not acted on grounds that apply generally to the class and

---

[7] Plaintiffs note that in the Third Circuit, the requirements of Rule 23(b) are "almost automatically satisfied in actions primarily seeking injunctive relief." ECF No. [32] at 22 (citing *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). However, the Court follows the precedent in the Southern District of Florida – which Plaintiffs also cite – that requires the Court to examine whether class members have suffered a "common injury that may properly be addressed by class-wide injunctive or equitable relief." *See Ibrahim v. Acosta*, 326 F.R.D. 697, 701 (S.D. Fla. 2018) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983)); ECF No. [32] at 22.

that the relief sought would not be uniformly applied. *See* ECF No. [38] at 11. As noted above, Defendant argues that it offered Plaintiffs who are arriving aliens, as well as the putative class of similarly situated arriving aliens, the relief they seek in the lawsuit, namely § 1182(d)(5) parole documents. ECF No. [38] at 9. On the other hand, Defendant did not offer Plaintiffs who are non-arriving aliens the same relief that Plaintiffs seek. *See id*. Defendant further argues that it has not acted on grounds that apply to non-arriving aliens because some non-arriving aliens were released pursuant to the *Padilla* Injunction, some were released pursuant to *In re X-K-*, and some were conditionally paroled or released on bond because they were detained pursuant to § 1226(a). *See id.* at 12. In the Reply, Plaintiffs argue that Defendant's action in granting the relief sought to some of the Plaintiffs does negate the fact that Defendant acted on grounds that apply generally to the class by refusing to recognize every class member's release as a parole under § 1182(d)(5). *See* ECF No. [44] at 3.

Plaintiffs are persuasive to the extent that they argue that Defendant has acted on grounds that apply generally to the class by denying all putative class members their § 1182(d)(5) parole documents. The fact that Defendant subsequently settled the claims with respect to some of the Plaintiffs does not negate the fact that Defendant previously denied the entire proposed class' § 1182(d)(5) parole documents. By Defendant's logic, any class certification under Rule 23(b) could be defeated by offering some members of the proposed class the relief they seek once the class action is filed. As such, Defendant did act on grounds that apply generally to the class in this case.

However, as Defendant correctly argues, Plaintiffs fail to show that the "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b); ECF No. [38] at 11. In interpreting Rule 23(b), the Supreme Court has held that

"[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotations and citation omitted). The focus of the Supreme Court's analysis in *Wal-Mart* was the class-wide nature of the possible injunctive or declaratory relief, not the class-wide nature of injury suffered. *See id.* ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." (emphasis in original)). In this case, depending on the interpretation of *Jennings*, the injunctive or declaratory relief Plaintiffs seek could require an individualized assessment for each member of the class --- first to determine if each member of the putative class is an arriving alien or a non-arriving alien; and then a second analysis for non-arriving aliens to determine whether each non-arriving alien is entitled to § 1182(d)(5) parole. Thus, although Defendant may have denied the proposed class parole under § 1182(d)(5), causing the proposed class to suffer the same alleged injury, the relief sought may not be granted on a class-wide basis.

Plaintiffs challenge Defendant's argument on this matter by again claiming that Defendant has mischaracterized the scope of the class to include aliens released by immigration judges and federal court orders. ECF No. [44] at 3. As noted above, however, Defendant does not mischaracterize the scope of the class since the class definition does not limit the class to those released by DHS under its own volition. *See* ECF No. [32] at 3. Further, even if the class was limited to those released by DHS under its own volition, whether injunctive or declaratory relief could apply to both arriving and non-arriving aliens would require an interpretation of *Jennings*,

which could yield different outcomes for different class members as noted above. Accordingly, Plaintiff has failed to meet the burden of satisfying the requirements of Rule 23(b).

### E.  Motion to Add Named-Plaintiffs

Lastly, the Court addresses the Motion to Add Named-Plaintiffs, ECF No. [43]. As stated above, the Court considers the Motion to Add Named-Plaintiffs after addressing the Motion for Class Certification because the joinder of Group 3 does not affect the Court's analysis of the Motion for Class Certification. When considering the joinder of parties, "the broadest possible scope of action consistent with fairness to the parties . . . is strongly encouraged." *United Mine Workers*, 282 U.S. at 724. Additionally, under Rule 21, the Court "may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The Eleventh Circuit has determined that district courts are given "broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan*, 293 F.3d at 1253.

Plaintiffs' primary reasons for joining nineteen (19) additional Plaintiffs in Group 3 are: (1) to ensure that both arriving aliens and non-arriving aliens are among the named Plaintiffs in the event that the Court rules that there is a lack of commonality between arriving aliens and non-arriving aliens and thus certifies subclasses; and (2) to ensure the adequacy of class representatives once Group 2 is dropped from the lawsuit. ECF No. [43] at 6-7. Group 3 is intended to justify subclasses should the need for subclasses arise and to ensure a large and diverse enough group of named Plaintiffs in case Group 2 is dropped from the lawsuit. However, as discussed above, the Court finds that there is a lack of commonality between arriving aliens and non-arriving aliens, and the Court declines to *sua sponte* define subclasses or determine whether the subclasses meet the requirements for class certification. *See Heaven*, 118 F.3d at 738. As such, the joinder of additional Plaintiffs based on Plaintiff's first argument is unpersuasive. In addition, Group 2 has

not yet been dropped from the lawsuit, and this Order addressed the Motion for Class Certification by taking into consideration Group 2 Plaintiffs. As such, Plaintiffs' second argument for joining Group 3 is moot.

Plaintiffs fail to raise an argument to join additional Plaintiffs in the event that the Court denies class certification. *See generally* ECF No. [43]. Plaintiffs do, however, cite a case from the Northern District of Georgia stating that "the interests of judicial economy will be served by adding these new plaintiffs-whether or not class certification is granted," as it would avoid "the filing of a second, possibly duplicitous suit." ECF No. [43] at 3-4 (quoting *Hawkins v. Fulton Cty.*, 95 F.R.D. 88, 91 (N.D. Ga. 1982)) (emphasis omitted). Defendant does not state whether it would agree or oppose the joinder of Group 3 if the Court does not certify the class. *See* ECF No. [46] at 5. Defendant instead states its intention to agree or oppose the joinder after the Court renders the decision on the Motion for Class Certification and Plaintiffs seek to add individual plaintiffs at that time. *See id.*

The joinder of nineteen (19) additional Plaintiffs at this stage would not serve the interests of judicial economy. If the Court were to grant the Motion to Add Named-Plaintiffs, Defendant would be required to gather the administrative record for Group 3. However, the deadline for Defendant to file the administrative record has already passed, and Plaintiffs' summary judgment motion is due on December 6, 2021. Defendant would likely not have enough time to compile an updated administrative record for Plaintiffs' summary judgment motion.[8] Furthermore, Plaintiffs already had an opportunity to join additional Plaintiffs. ECF No. [30]. Therefore, Plaintiffs' Motion to Add Named-Plaintiffs is denied.

---

[8] Plaintiffs state their willingness to proceed without an administrative record. *See* ECF No. [47] at 2-3. However, given the individualized assessment that would be required for a multi-plaintiff case, the Court is unwilling to proceed without an administrative record.

Case No. 21-cv-23213-BLOOM/Otazo-Reyes

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion for Class Certification, **ECF No. [32]**, is **DENIED**.

2.  Plaintiffs' Motion to Add Named-Plaintiffs, **ECF No. [43]**, is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record